```
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF CONNECTICUT


SHERMAN STREET
ASSOCIATES LLC ET AL,
        -Plaintiffs


     -vs-                               3:03-CV-01875 (CFD)(TPS)


JTH TAX, INC., ET AL.,
        -Defendants.
```

### RULING ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER, PLAINTIFF'S MOTION TO QUASH AND DEFENDANT'S MOTION TO COMPEL

This diversity case is a franchisor-franchisee dispute brought pursuant to, *inter alia*, the Connecticut Franchise Act, Conn. Gen. Stat. 42-133e *et seq*. Plaintiff, Michael Knight ("Knight"), is a certified public account. In 2002, Knight contracted with the defendant, JTH Tax Incorporated ("JTH"), to open ten Liberty Tax Service franchises ("Liberty"). JTH is in the business of franchising Liberty business. Liberty offers income tax preparation services similar to H & R Block or Jackson Hewitt. "Knight later assigned his rights under the franchise agreements to plaintiff Sherman Street Associates, LLC, a company that Knight created as an entity to run his Liberty Tax franchises." (Dkt. #79 at 2.).[1]

---

[1] For the purposes of these motions only the court treats Knight and Sherman Street Associates LLC as one party.

Plaintiff alleges that in January of 2003 JTH forced Knight to sell back five of the ten franchises he had contracted to operate. Plaintiff further asserts that on September 30, 2003, JTH attempted to terminate the remaining franchise agreements. Plaintiff contends that this attempted termination violated the 2002 franchise agreements. Plaintiff's claims as articulated in his complaint include illegal termination of a franchise agreement, interference with business expectancy, and breach of duty of good faith and fair dealing. Knight seeks actual compensatory damages, treble damages and attorney's fees and costs.

For its part, defendant denies that it violated the 2002 franchise agreements. Defendant asserts that the termination was permitted under the contracts because Knight failed to pay the royalties specified in the agreements. The failue to pay royalties allegation also serves as the primary basis for a breach of contract counterclaim brought by the defendant. (Dkt. #88.)

Defendant further claims that before entering into the agreements Knight asserted that he had a net worth of $1.5 million, no liabilities and a $300,000 line of credit. JTH represents that it has a good faith reason to believe that Knight misrepresented his financial well-being. Defendant argues that plaintiff did not have the financial resources to successfully run ten Liberty franchises.

There are currently three related pending discovery motions

before the court.  For the foregoing reasons, plaintiff's motion for protective order **(Dkt. #78)** and motion to quash **(Dkt. #80)** are **DENIED**.  Defendant's motion to compel **(Dkt. #84)** is **GRANTED**.

## I.  Discussion

The three motions pending before the court overlap in substance.  The issue common to all three is whether information regarding Knight's financial status prior to 2002 is relevant and therefore discoverable.

Plaintiff's motion to quash challenges five subpoenas served by the defendant on various financial institutions.  The subpoenas seek, *inter alia*, account, credit, loan and mortgage applications, as well as credit reports, financial statements and correspondence between plaintiff and the financial institutions.  The subpoenas request this information as to Michael Knight, Sherman Street LLC and Michael J. Knight & Co., CPAs.  Plaintiff's motion for a protective order supplements the motion to quash in that it prays that the discovery sought be prohibited and for an order preventing such similar discovery in the future.

Defendant's motion to compel seeks an order compelling the plaintiff to respond to requests for production 13, 20 and 21.[2]  Production request 13 requests Knight's tax returns from 2001 to the present.  Request 20 seeks all documentation evidencing

---

[2] The motion also addresses plaintiff's response to interrogatory number 5 which the court will discuss *infra*.

Knight's assets in August 2002.  Request 21, conversely, seeks all documentation evidencing Knight's liabilities for the same time period.

Plaintiff argues his financial information is completely irrelevant and therefore not discoverable.  Defendant contends that plaintiff's financial information is directly relevant to the issue of lost profit damages.  The court finds that the financial information sought by the defendant is relevant.

**A.   Relevance of Plaintiff's Financial Information**

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party...Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  Relevance is to be "broadly construed, and a request for discovery should be considered relevant if there is *any possibility* that the information sought may be relevant to the claim or defense of any party."  Favale v. Roman Catholic Diocese of Bridgeport, No. 3:04CV1220(DJS), 2005 U.S. Dist., LEXIS 27154 at *8-9 (D. Conn. Nov. 8, 2005) (quoting Merrill v. Waffle House, Inc., 227 F.R.D. 467, 470 (N.D. Tex. 2005)(emphasis added).  The party resisting discovery bears the burden of showing why discovery should be denied.  Blakenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975).

Plaintiff argues that his financial information is irrelevant because "the relevant inquiry is not Knight's ability to pay these amounts [the royalties], but rather whether the amounts were actually due and, if so, whether Knight in fact failed to pay them." (Dkt. #79 at 9.) The court disagrees. Plaintiff's argument overlooks the fact that plaintiff has sued for compensatory damages stemming from JTX's termination of the franchise agreements. Plaintiff asserts that the termination violated the agreements. If defendant is found to have breached the franchise agreements it is likely that it will be ordered to pay compensatory damages. Compensatory damages in this case would include compensation for plaintiff's lost profits. To receive lost profits compensation plaintiff must demonstrate, to a reasonable degree of certainty, the profits he would have earned but for the breach. Scapa Tapes N. Am., Inc. v. Avery Dennison Corp., 384 F. Supp. 2d 544, 558 (D. Conn. 2005).

JTX alleges that Knight intentionally overstated his net worth in order to obtain the franchise agreement. If these allegations turn out to be supported by extrinsic evidence, the amount of lost profits Knight would be entitled to could be reduced or eliminated. In other words, JTX could demonstrate that Knight could not have reasonably expected to realize any profit from the Liberty franchises because he had undercapitalized them from their inception.

The court finds that information regarding Knight's financial situation prior to entering the franchise agreement is clearly relevant to the claim of compensatory damages and is therefore discoverable.

**B.   Scope of the Subpoenas**

Plaintiff also challenges the scope of the subpoenas arguing that, "there is no reason to require the production of Knight's personal financial records for a two-and-one-half year period predating the earliest alleged contacts between the parties." (Dkt. #79 at 10.)  The subpoenas seek financial information from January 1, 2000 to December 31, 2003.  Defendant represents that the franchise agreements were entered into in July of 2002.  Defendants have not addressed this issue in their memorandum in opposition.  The court, however, finds that the time period specified in the subpoenas is reasonable and not overly broad or unduly intrusive.

**C.   Interrogatory 5: Location &
       Custodian of Computer Hard Drives**

Defendant's motion to compel also seeks an order compelling a more sufficient answer to interrogatory 5.  Interrogatory five asked for information regarding the location and custodian of computer hard drives used by the plaintiff from January 1, 2002 to the present.  Plaintiff has responded that he does not posses the hard drives nor does he know their current location.  Plaintiff maintains this assertion in his memorandum in opposition to

defendant's motion.

Defendant's motion is granted to the limited extent that plaintiff is **ORDERED** to make a reasonable and good faith effort to locate the hard drives. If plaintiff is unable to locate the drives he shall so indicate in a signed, sworn supplemental reply to defendant's interrogatory.

## II.   Conclusion

Based on the discussion herein, plaintiff's motion for protective order **(Dkt. #78)** and motion to quash **(Dkt. #80)** are **DENIED**. Defendant's motion to compel **(Dkt. #84)** is **GRANTED**. Plaintiff is **ORDERED** to respond to the production requests and interrogatory at issue here within 30 days hereof.

This is not a recommended ruling. This is a discovery ruling and order reviewable pursuant to the "clearly erroneous" standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 6(a), (e) and 72(a); and Rule 2 of the Local Rules for U.S. Magistrate Judges. As such, it is an order of the court. See 28 U.S.C. § 636(b)(written objections to ruling must be filed within ten days after service of same).

**IT IS SO ORDERED.**

**Dated at Hartford, Connecticut this 28th day of November, 2006.**

                                   **/s/ Thomas P. Smith**
                                   **Thomas P. Smith**
                                   **United States Magistrate Judge**