UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHERMAN STREET ASSOCIATES, : <br> LLC. AND MICHAEL J. KNIGHT, : <br>     plaintiffs : <br> : <br>                v.                : <br> : <br> JTH TAX, INC. ET AL., : <br>     defendants : | 3:03-cv-1875 (CFD) |

**RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

**I.    Introduction and Background[1]**

This case involves a claim by plaintiffs Sherman Street Associates, LLC ("Sherman Street") and Michael J. Knight against defendant JTH Tax, Inc., d/b/a Liberty Tax Service ("Liberty").[2] Liberty is a franchisor operating and licensing franchises to operate income tax preparation offices. It is incorporated in Delaware and maintains its principal place of business in Virginia Beach, Virginia.[3] Sherman Street is a Connecticut corporation that entered into several franchise agreements with Liberty. Sherman Street alleges that on September 30, 2003, Liberty illegally terminated these franchise agreements without good cause, in violation of the

---

[1]The Court assumes the parties' familiarity with the facts and history of this case and includes only an abbreviated summary of those facts here. See Sherman St. Assocs., LLC v. JTH Tax, Inc., No. 3:03cv1875(CFD), 2004 WL 2377227 (D. Conn. Sept. 30, 2004).

[2]The Complaint names "Liberty Tax Service, Inc." as a separate defendant.

[3]Defendant's Notice of Removal [Dkt. # 1]. This case was originally filed in the Superior Court in Bridgeport, Connecticut and removed to this court. The additional facts related herein are taken from the parties' briefs, affidavits, depositions, and Rule 56(a) statements of fact and are undisputed unless otherwise noted.

Connecticut Franchise Act ("CFA"), Conn. Gen. Stat. § 42-133f, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b *et seq.*, and that the terminations constituted tortious interference with business expectancy and a breach of the implied duty of good faith and fair dealing.[4]  The defendants have moved for summary judgment [Dkt. # 101] and the plaintiffs have made a cross-motion for summary judgment [Dkt. # 105].

The Liberty franchise agreements each contained a choice of law provision stating that "Virginia law governs all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto.  However, the Virginia Retail Franchising Act does not apply to any claims [relating to franchises] located outside of Virginia."  The motions for summary judgment raise an initial question as to whether this choice of law provision is effective under Connecticut law.  Because this Court holds that the choice of law provision is invalid as to a claim under Conn. Gen. Stat. § 42-133f, the Court also considers whether the termination of Sherman Street's franchises was valid under that statute, which requires that termination be for "good cause" and with at least sixty days' advance notice.

**II.    Summary Judgment Standard**

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White

---

[4]Liberty's amended counterclaim [Dkt. # 88] (1) demands an accounting of customer receipts and other financial information from Sherman Street, pursuant to Paragraph 7(d) of the Franchise Agreements, and alleges that Sherman Street owes restitution, disgorgement of profits, royalty payments, advertising fees, and interest; (2) alleges breach of the franchise agreements by Sherman Street; (3) alleges breach of the 2003 promissory note of $44,000; and (4) alleges that Knight breached his obligations as guarantor of the obligations of Sherman Street.

v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000); Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994)).  Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor.  Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38.  "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party."  Carlton, 202 F.3d at 134. Consistent with this standard, all evidence favorable to the nonmoving party must be credited if a reasonable jury could credit it.  Evidence favorable to the moving party, on the other hand, must be disregarded unless a reasonable jury would have to credit it because it comes from a disinterested source and is uncontradicted and unimpeached. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000).  "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury.  Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

**III.   Discussion**

    **A.   Choice of Law**

A federal court sitting in diversity must apply the choice-of-law rules of the forum state. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496-97 (1941). Because the parties are in

-3-

federal court under diversity jurisdiction, this Court will apply Connecticut's choice of law rules. Under Connecticut choice-of-law rules, Connecticut courts will generally give effect to the parties' contractual choice-of-law provisions. Elgar v. Elgar, 238 Conn. 839, 848, 679 A.2d 937 (1996) (noting that Connecticut courts "have given effect to an express choice of law by the parties to a contract provided that it was made in good faith"). Adopting the language of section 187 of the Restatement (Second) of Conflict of Laws, the Connecticut Supreme Court in Elgar held that "[p]arties to a contract generally are allowed to select the law that will govern their contract, unless either: '(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.'" Id. at 850, 679 A.2d 937 (quoting Restatement (Second) of Conflict of Laws, § 187 (1971)). Virginia law will therefore apply in this case unless one of these two factors is present.

      Both Virginia and Connecticut clearly have substantial relationships to the parties to this action. The relevant questions under the second prong of the Elgar test are thus (1) whether Connecticut has a materially greater interest than Virginia in the determination of the issue in each count of the complaint, and (2) whether application of Virginia law would be contrary to a fundamental policy of Connecticut. As to the CUTPA count, decisions of the Connecticut state court and this Court have held that forum-selection clauses can bar CUTPA claims, and that these provisions do not violate Connecticut public policy. See, e.g., Pepe v. GNC Franchising,

-4-

Inc., 46 Conn. Supp. 296, 299-300, 750 A.2d 1167, 1169 (Conn. Super. Ct. 2000); Sherman St. Assocs., LLC v. JTH Tax, Inc., No. 3:03cv1875(CFD), 2004 WL 2377227, *7-11 (D. Conn. Sept. 30, 2004).  However, a forum waiver is invalid with respect to an action for violation of the CFA, § 42-133f.  Pepe 46 Conn. Supp. at 300.  The Court finds the principles articulated in Pepe and Sherman St. Assocs. equally applicable to the choice of law provision in question here.  Connecticut has a strong public policy, demonstrated by the CFA and its "remedial purpose" of preventing a franchisor from unfairly exerting its economic leverage to take advantage of a franchisee, that weighs against allowing a Connecticut franchisee to waive its right to the protections of the CFA.  See also Conn. Gen. Stat. § 42-133f(f) ("Any waiver of the rights of a franchisee under sections 42-133f or 42-133g which is contained in any franchise agreement entered into or amended on or after June 12, 1975, shall be void.")

The Court finds that Connecticut law governs the CFA claim in count one; however, Virginia law applies to the CUTPA claim in count two and bars that claim.  Accordingly, the defendant's motion for summary judgment is granted as to count two.

As to the common law claims for tortious interference and breach of the implied duty of good faith and fair dealing (counts three and four), the second prong of the Elgar test requires the Court to consider (1) whether Connecticut has a materially greater interest than Virginia in determining the common law claims available to the plaintiffs, and (2) whether application of Virginia common law would be contrary to a fundamental policy of Connecticut.  Even if the Court were to assume that Connecticut has a materially greater interest than Virginia in the outcome of the common law claims, application of Virginia common law is not contrary to any fundamental policy of Connecticut.  The fundamental policy goals of Connecticut relating to the

protection of franchisees are embodied in the CFA, limited to the terms of the CFA, and are not violated here, as the Court holds that the CFA count is not precluded by the choice of law provision. Virginia common law does not deprive the plaintiff of a remedy simply by virtue of being different or less favorable than Connecticut common law. Cf. Roby v. Corporation of Lloyd's, 996 F.2d 1353, 1363 (2d Cir. 1993). Accordingly, the Court will give effect to the choice of law provision with respect to common law claims, and Virginia law will govern the disposition of counts three and four.

      **B.**    **Connecticut Franchise Act ("CFA") Claim, Conn. Gen. Stat. § 42-133f**

The plaintiffs claim that Liberty terminated Sherman Street's franchises without good cause and without proper notice, in violation of Conn. Gen. Stat. § 42-133f. This statute provides that "No franchisor shall . . . terminate, cancel or fail to renew a franchise, except for good cause which shall include . . . the franchisee's refusal or failure to comply substantially with any material and reasonable obligation of the franchise agreement . . . . The franchisor shall give the franchisee written notice of such termination, cancellation, or intent not to renew, at least sixty days in advance to such termination, cancellation or failure to renew with the cause stated thereon." Id.

The Court finds that genuine issues of material fact remain, including (1) whether any of the defendant's three "notices to cure" constituted sufficient notice of termination under Conn. Gen. Stat. § 42-133f, (2) whether Liberty had "good cause" to terminate the franchise agreements, and (3) how much money was paid to Liberty, and whether any money was still owed to Liberty, under the agreements. (See, e.g., Dkt. # 103-4 at 13, 16). Accordingly, the defendant's motion for summary judgment is denied as to count one.

### C. Common Law Claims (Tortious Interference, Breach of Implied Covenant of Good Faith)

Virginia law permits recovery for tortious interference with business expectancy where a party can show "(1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) the defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) damages to plaintiff." Am. Chiropractic v. Trigon Healthcare, 367 F.3d 212, 228 (4th Cir. Va. 2004) (citing Commercial Bus. Sys., Inc. v. Halifax Corp., 253 Va. 292, 484 S.E. 2d 892, 896 (Va. 1997)). "When a plaintiff is alleging that a third party has interfered with a business expectancy rather than with an actual contract, the plaintiff must 'show that the defendant interfered by employing improper methods.'" Id. (citing Peterson v. Cooley, 142 F.3d 181, 186 (4th Cir. 1998)). "Improper methods are 'those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules.'" Id. (citing Duggin v. Adams, 234 Va. 221, 360 S.E. 2d 832, 836, 4 Va. Law Rep. 820 (Va. 1987)). Material questions of fact remain as to whether Liberty employed improper methods; accordingly, the defendant's motion for summary judgment is denied as to count three.

"Under Virginia law, every contract contains an implied covenant of good faith and fair dealing; however, a breach of those duties only gives rise to a breach of contract claim, not a separate cause of action." Frank Brunckhorst Co., L.L.C. v. Coastal Atl., Inc., 542 F. Supp. 2d 452, 462 (E.D. Va. 2008) (citing Charles E. Brauer Co. v. NationsBank of Va., N.A., 251 Va. 28, 33, 466 S.E.2d 382 (1996) (holding that "the failure to act in good faith . . . does not amount to

an independent tort" and "the breach of the implied duty . . . give rise only to a cause of action for breach of contract")). The plaintiffs have not alleged a breach of contract. Accordingly, the defendant's motion for summary judgment is granted as to count four.

### D. Plaintiffs' Cross-Motion for Summary Judgment

Sherman Street cross-moved for summary judgment [Dkt. # 105] on the CFA claim (count one) and on the tortious interference claim (count three). The Court finds that material questions of fact remain as to both these counts. Accordingly, the cross-motion for summary judgment is denied.

### IV. Conclusion

For the foregoing reasons, the Motion for Summary Judgment [Dkt. # 101] is GRANTED in part and DENIED in part. [GRANTED as to counts two and four and DENIED as to counts one and three.]

The cross-motion for summary judgment [Dkt. # 105] is DENIED.

So ordered this 20th day of February, 2009 at Hartford, Connecticut.

                                        /s/ Christopher F. Droney
                                  **CHRISTOPHER F. DRONEY**
                                  **UNITED STATES DISTRICT JUDGE**