SHERMAN STREET ASSOCIATES, LLC     :
and MICHAEL KNIGHT,       :
      Plaintiffs,       :     3:03-cv-1875 (CFD)
               :
       v.         :
               :
JTH TAX, INC. ET AL.,       :
      Defendants.     :

## RULING ON MOTION IN LIMINE

Defendant JTH Tax, Inc., d/b/a/ Liberty Tax Service ("Liberty") brings this Motion in Limine to exclude certain damages related testimony. In response to interrogatories, Sherman produced damages calculations worksheets ("worksheets") which estimate Sherman's total purported damages. At their depositions, Michael Knight, the owner of Sherman Street Associates, and his former manager Ryan Sheppard, testified that they prepared the worksheets themselves. The first set of damages calculations Sherman Street produced on April 3, 2006 lists expenses for the first year Sherman Street operated its franchises, estimated net earnings for the next three years at Sherman Street's four operational franchises, estimated net earnings at the five other terminated franchises, and some additional expenses and subtractions. The resulting total is $1,911,367. The second set of damages calculations were produced on February 23, 2007, after the end of the discovery period, and contains a slightly more complicated analysis. The second supplemental worksheet appears to use projected sales for five of the franchises multiplied by a mulitplier of 1.7 to arrive at the value of those franchises. To that figure is added the value of the five unopened franchises, "low income outreach lost profits," and a "gross up for tax effect."

From that sub-total is subtracted the value of a promissory note and an amount due for the five unopened franchises. The resulting total comes out to $1,913,287.

Sherman Street stated in its memorandum in response to this motion that it would not seek to offer the damages worksheets into evidence as full exhibits. However, Liberty seeks to limit Knight and Sheppard's testimony about the calculations contained in those worksheets. Liberty believes the calculations embodied in the worksheets rely on the kind of "specialized knowledge" on which only an expert witness may rely. Fed.R.Evid. 702. Since neither Knight nor Sheppard was designated as an expert witness pursuant to Rule 26 of the Federal Rules of Civil Procedure, Liberty asks the Court to limit Knight and Sheppard's damages-related testimony to lay opinion testimony, which must be "rationally based on the perception of the witness." Fed.R.Evid. 701. Liberty believes Knight and Sheppard's testimony about the franchises' actual expenses is admissible, but that any projections about the franchises' future expenses or lost profits is inadmissible, because it could only properly be offered by an expert.

The commentary to Rule 701 says that "most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert." See Fed. R. Evid. 701 Advisory Committee's Notes to the 2000 Amendments. In this case, Knight was the owner of the franchises, and Sheppard was the day-to-day manager. But the particular history of this business makes the application of Rule 701 to Knight and Sheppard a closer question. Because Sherman Street only operated four franchises for one tax season, its calculations of lost profits for ten franchises over several years are more speculative than a more typical calculation of lost earnings by a business owner. Because Sherman Street does not have a fuller "track record" of

income and expenses on which to base a well-documented calculation for future lost earnings, in order to arrive at their damages calculation of approximately $1.9 million dollars, Sherman Street in its second worksheet relies on a "multiplier" of 1.7, times the projected future earnings of each franchise, to arrive at the value of each franchise. Liberty argues the value of that multiplier, and the methodology of using such a multiplier to value a business, cannot be "rationally based on the perception[s]" of Knight and Sheppard, but must be based on their "specialized knowledge." As a result, Liberty concludes Knight and Sheppard could only present this testimony if designated as experts.

The Second Circuit has held that a witness's knowledge of accounting techniques "does not render his testimony 'expert' as long as it was based on his 'investigation and reflected his investigatory findings and conclusions, and was not rooted *exclusively* in his expertise.'" United States v. Rigas, 490 F.3d 208, 224 (2nd Cir. 2007) (citing Bank of China, New York Branch v. NBM LLC, 359 F.3d 171, 181 (2nd Cir. 2004) (emphasis added). In a case somewhat analogous to this one, Lightning Tube, Inc. v. Whito Corp., 4 F.3d 1153 (3rd Cir. 1993), the Third Circuit held that a district court did not abuse its discretion by allowing the lay opinion testimony of a franchisor who calculated the future lost profits of his franchises with the help of an accountant. The defendant had contended the projections were not based on the franchisor's rational perceptions because he relied on the reports of an accountant. But the district court found, and the Third Circuit affirmed, that because the franchisor participated in the preparation of the accounting report, and because of his day-to-day involvement in the management of his business, he could properly offer lay opinion testimony about the lost profit calculations.

In this case, both Knight and Sheppard are themselves accountants. They ran a tax

preparation business, which necessarily required a degree of familiarity with accounting principles. As a result, their damages calculations relied in part on their knowledge of the particular financial history of Sherman Street's franchises, and in part on methodologies of profit calculation and business valuation that may be unknown to the typical business owner. In effect, they acted as their own accountants in preparing the damages worksheets. Because they prepared the worksheets themselves, and are personally familiar with the calculations contained in them, they are like the franchisee in Lightning Tube who was permitted to testify based on his personal business knowledge and what he learned while calculating lost profits alongside his accountant.

This is not a *Daubert* motion. At this stage, the Court need not make a detailed inquiry into the reliability of the methods used to arrive at the final damages number. Liberty will have the opportunity to vigorously cross-examine Knight and Sheppard about how they arrived at the figures they did. At trial, it may very well be revealed that their calculations are unreliable and unsupported. If so, that will affect the weight of their damages-related testimony, but it does not affect its admissibility under Rule 701. Therefore, Knight and Sheppard may testify about the calculations contained in the damages worksheets, including future lost profits. Plaintiffs' counsel is directed to make both Knight and Sheppard available for deposition during the week of October 25–29, 2010, if Liberty's counsel wishes to ask them additional questions about their damages calculations.

Finally, Liberty also argues Sherman should be limited to presenting only evidence of damages sustained during the 60 days following the termination of the franchise agreements, because Sherman claims a violation of the Connecticut Franchise Act ("CFA") . Courts interpreting the CFA have held that if a party is found liable for failure to give the requisite 60

days notice of termination, the terminated franchisee is only entitled to damages incurred during the period in which they should have had proper notice. See, e.g., Petereit v. S.B. Thomas, Inc., 63 F.3d 1169, 1186–87 (2nd Cir. 1995) (holding that the procedural remedy under the Franchise Act is restricted to making plaintiffs whole for lost profits during time they did not have requisite notice). Therefore, Liberty argues, any discussion of damages incurred after that 60 day period are irrelevant, and should be excluded. However, Liberty's argument fails to consider that another element of the CFA claim to be tried is whether or not the franchise agreement termination was supported by "good cause." If the Court determines during trial that there was no good cause for the termination of the franchise agreement, then Sherman Street's losses incurred beyond the 60 day time frame may be relevant to a final damages calculation.

For these reasons, the Defendant/Counterclaimant's Motion in Limine to Exclude Certain Damages Related Testimony and Documents [Dkt. #162] is DENIED.

SO ORDERED this  25th  day of October 2010, at Hartford, Connecticut.


 /s/ Christopher F. Droney

**CHRISTOPHER F. DRONEY
UNITED STATES DISTRICT JUDGE**